FILED

SEP 1 9 2022

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Revised 07/07 WDNY

Joshua Ryan Sinclair
_____
Name of Plaintiff

- vs -

The Ralph & Joan Forgione ESTATES
Anthony Forgione (Successor Trustee of
     The Ralph & Joan Forgione ESTATES
REALTY EXCHANGE, LLC; CSL SYSTEMS;
CLINTON STONE, LLC; WATER SONG DEVELOPMENT;
AUTO LOCATORS; EASTCORP PROPERTIES
_____
Name of Defendant or Defendants

Jury Trial Demanded: Yes ✓  No____

**DISCRIMINATION COMPLAINT**
_22_ -CV- _6398  EAW_

You should attach a copy of your **original Equal Employment Opportunity Commission
(EEOC) complaint,** a copy of the Equal Employment Opportunity Commission **decision, AND**
a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint. Failure to do
so may delay your case.
*Note:* Only those grounds raised in the charge filed with the Equal Employment Opportunity
     Commission can be considered by the federal district court under the federal
     employment discrimination statutes.

This action is brought for discrimination in employment pursuant to *(check only those that
apply)*:

✓   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17
     (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race,
     color, gender, religion, national origin).
          **NOTE**: In order to bring suit in federal district court under Title
          VII, you **must first obtain a right to sue letter** from the Equal
          Employment Opportunity Commission.

____   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634
     (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of
     1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).
          **NOTE**: In order to bring suit in federal district court under the Age
          Discrimination in Employment Act, you **must first file charges** with the
          Equal Employment Opportunity Commission.

____   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117
     (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).
          **NOTE:** In order to bring suit in federal district court under the Americans
          with Disabilities Act, you **must first obtain a right to sue letter** from the
          Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the
aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be
appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of
1991, Pub.L.No. 102-166, and any related claims under New York law.

**In addition to the federal claims indicated above**, you may wish to include New York State claims pursuant to 28 U.S.C. § 1367(a).

☑   New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status).

## PARTIES

1.   My address is: **C/O:  88 Rodney Lane, Rochester, NY 14625**

My telephone number is: **(585) 503-5863**

2.   The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:   The Ralph & Joan Forgione ESTATES; Anthony Forgione (Successor Trustee of The Ralph & Joan Forgione Estates); REALTY EXCHANGE, LLC; CSL SYSTEMS; CLINTON STONE, LLC; WATER SONG DEVELOPMENT; AUTO LOCATORS;

Name: _____ EASTCORP PROPERTIES

Number of employees: __**2+ (?)**_____

Address: _____ **56 Rodney Lane, Rochester, NY**
_____ **14 Green Pine Lane, Webster, NY**
_____ **772 Ridge Road, Webster, NY**
_____ **1536 SE 15th CT, #103, Deerfield Beach, FL**

3.   (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

Name: _____

Address: _____
_____
_____

## CLAIMS

4.   I was first employed by the defendant on (date): **11/28/2020**

2

5. As nearly as possible, the date when the first alleged discriminatory act occurred is: _____ **On or about 3/31/21**

6. As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any did): __**On or about 4/8/21**_____

_____
_____

7. I believe that the defendant(s)

   a. ✔  Are still committing these acts against me.
   b. _____  Are not still committing these acts against me.
   (Complete this next item **only** if you checked "b" above)   The last discriminatory act
   against me occurred on (date) _____           **(Retaliation continues to the present)**

8. (Complete this section **only** if you filed a complaint with the New York State Division of Human Rights)

   The date when I filed a complaint with the New York State Division of Human Rights is
   __**11/3/21**_____
   _ (estimate the date, if necessary)

   I filed that complaint in (identify the city and state): ___**Rochester, NY**_____

   _____

   The Complaint Number was: __**10214250 & 10214257**_____

9. The New York State Human Rights Commission did ____ **✱?✱** ____ /did not _____
   issue a decision. (**NOTE:** If it **did** issue a decision, you **must attach** one copy of the
   decision to **each** copy of the complaint; failure to do so will delay the initiation of your
   case.) **✱ I received a letter from the EEOC indicating that the NYSDHR issued a decision,
   but I never received a copy of the NYSDHR's decision**

10. The date (if necessary, estimate the date as accurately as possible) I filed charges with the
    Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged
    discriminatory conduct is: ___**Complaint was jointly filed with the EEOC by the NYSDHR on or about 11/10/21**

11. The Equal Employment Opportunity Commission did ____ ✔ ____ /did not
    _____ issue a decision. (**NOTE:** If it **did** issue a decision, you **must attach** one
    copy of the decision to **each** copy of the complaint; failure to do so will delay the
    initiation of your case.)

12. The Equal Employment Opportunity Commission issued the attached Notice of Right to
    Sue letter which I received on: ____**On or about 6/21/22**_____. (**NOTE:** If it

did issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13.  I am complaining in this action of the following types of actions by the defendants:

a. _____  Failure to provide me with reasonable accommodations to the application process

b. *✓*  Failure to employ me **(\* Please see explanation below for letter "J")**

c. _____  Termination of my employment

d. _____  Failure to promote me

e. _____  Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

f. _____  Harassment on the basis of my sex

g. *✓*  Harassment on the basis of unequal terms and conditions of my employment  **(\* Please see explanation below for letter "J")**

h. ✓  Retaliation because I complained about discrimination or harassment directed toward me

i. _____  Retaliation because I complained about discrimination or harassment directed toward others

j. ✓  Other actions (please describe) his father who I was a volunteer live-in caregiver for died (11/28/20).

Anthony Forgione appears to be (have been) unwilling to hire and pay black people. He hired me to be a house sitter & 24-hour security after

But it eventually became obvious that he never intended to pay me, and he apparently thought that he could take advantage of me and get away with not paying me since my family and I cared for his father as volunteers. After four months passed and I complained about not being paid and about Anthony Forgione not keeping his word about other money that he promised my family and me, he called me "evil" and accused me of betraying him, and he began to RETALIATE against and refused to hire my family and me to be his disabled sister's paid caregivers, which he admitted that SHE requested.

14.  Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

a. ✓ Race

b. ✓ Color

c. _____ Sex

d. _____ Religion

e. _____ National Origin

f. _____ Sexual Harassment

g. _____ Age
_____ Date of birth

h. _____ Disability
Are you incorrectly perceived as being disabled by your employer?
_____ yes _____ no

15.  I believe that I was ✓ /was not _____ **intentionally** discriminated against by the defendant(s).

4

16. I believe that the defendant(s) is/are ✔ is not/are not _____ still committing these acts against me. (If you answer is that the acts are not still being committed, state when: _____ and why the defendant(s) stopped committing these acts against you: _____

17. A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim. (NOTE: You must attach a copy of the original complaint you filed with the Equal Employment Opportunity Commission and a copy of the Equal Employment Opportunity Commission affidavit to this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission (check one):
    _____ has not issued a Right to sue letter
    ✔ has issued a Right to sue letter, which I received on **June 21st, 2022**

19. State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

    In addition to the brief explanation given for letter "J" on page 4, a more detailed explanation is attached, along with my rebuttal to the Respondent's attorney's reply to my original complaints to the NYSDHR & EEOC .

    _____
    _____
    _____
    _____

## FOR LITIGANTS ALLEGING AGE DISCRIMINATION

20. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct
    _____ 60 days or more have elapsed _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM

21. I first disclosed my disability to my employer (or my employer first became aware of my disability on _____

22.   The date on which I first asked my employer for reasonable accommodation of my disability is _____

23.   The reasonable accommodations for my disability (if any) that my employer provided to me are: _____
_____
_____

24.   The reasonable accommodation provided to me by my employer were _____/were not _____ effective.

**WHEREFORE,** I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

Dated: **9/17/22**

Plaintiff's Signature

6



Eian-Gabriel Sinclair with the late Ralph Forgione (who the Sinclair family was volunteer live-in caregivers & security for for over 10 years, then Ralph's volunteer live-in hospice care providers until he passed away on 11/28/20) and Ralph's daughter Barbara (who has a physical disability)

Barb's brother Anthony Forgione admitted on 4/28/21 that he lied to his sister and to their father because his sister wanted the Sinclair family to become her paid live-in caregivers after their father passed away.

Anthony Forgione said he lied to Ralph & Barb because he did not think it would be fair to Joshua Sinclair (Eian's father) to care for his physically disabled sister, because he claimed that he was concerned that Barbara might say something that might upset Joshua.

Anthony Forgione also admitted that he is the Successor Trustee of their parent's estate and is responsible for making sure that his disabled sister has needed caregivers.

Yet, he lied to his own elderly father and physically disabled sister in order to avoid hiring the caregivers that his sister requested - who were the same caregivers that provided very reliable & compassionate care, companionship & security (& hospice care) for their elderly father (as volunteers) for over 10-years, until he passed away, in his home, with them at his side.

# RACIAL DISCRIMINATION & RETALIATION CASE FOR FEDERAL COURT

My name is Joshua Sinclair, my family and I are advocates and caregivers for the elderly and disabled, and hospice care providers.

The following fact and attached evidence is pertaining to a case of RACIAL DISCRIMINATION & MALICIOUS RETALIATION by the son of a disabled 90+ year old WW2 veteran, Ralph Forgione, that my family and I were volunteer live-in caregivers & security for for over 10-years, and then became his volunteer live-in hospice care providers when his health deteriorated during the coronavirus pandemic, until he passed away in his home on 11/28/20, at the age of 97, with my family & me, and his son, Anthony Forgione by his side.

A few hours after his father died, Anthony Forgione (who operates an auto dealership named Auto Locators outside of Rochester, NY, and several other businesses out of his deceased parent's house where my family & I resided) told my family & me that his father included money for us in his living trust; and that we were to have his father's car; and that his father wanted us to remain in his house as paid house sitters & security (and possibly as his disabled daughter, Barbara Forgione's paid caregivers) unless and until we would move, at which time we were assured that Anthony Forgione would pay our moving expenses and for a place for my family & me to move to, basically until we had another caregiving assignment, if not for his disabled sister, Barbara.

In addition to house sitting, I was also to provide 24-hour security for Anthony Forgione's deceased parent's belongings which were still in the house (Their "ESTATES"), and apparently for the records & supplies, and to sort mail (which his deceased father used to do) for the following businesses which Anthony Forgione operated out of his deceased parent's house, mail which one of his employees named Tim Granger would come to the house to pick up about every other week: REALTY EXCHANGE, LLC; CSL SYSTEMS; CLINTON STONE, LLC; WATER SONG DEVELOPMENT; AUTO LOCATORS; & EASTCORP PROPERTIES

However, four months passed and Anthony Forgione did not pay me. Then, after he hired an estate attorney, he even rescinded what he told us

about his father's living trust the day that his father died, and told us that his father did NOT include money for us in his living trust. It appears that he had the living trust changed to remove my family. I complained to the NYSDHR & EEOC because I was not being paid and because it became apparent that Anthony Forgione did not intend to pay me.

Anthony Forgione sent us an angry text message saying he felt betrayed and accused me (Joshua) of being evil for filing the complaints about not being paid. He finally paid me $2,500 in April of 2021 for the house sitting & security, and had his deceased father's car signed over to Tracy Estabrooks Sinclair. Then, he came to our residence with one of his auto dealership employees, Tim Granger, on 4/28/21 and again promised to pay for our moving expenses, and to rent a house or apartment for my family & me and our utilities bill (apparently per his deceased father's wishes) for 6-12 months. He claimed that he already house on South Avenue in the village of Webster which belonged to a friend of his, and that he would rent for us, and that we could move into that house that weekend. But I told him that we were hoping to move closer to the university that our then-14-year old son was just accepted to, and I requested that he give us the money that he said he was going to pay for our rent and utilities and moving expenses instead, so that we could use the money that he promised to purchase land or to rent an apartment closer to our son's college. He agreed to purchase land for us and encouraged us to begin looking for land to purchase and to let him know when we found some in the area that we wanted to move to. He also assured us that he was not going to have us kicked out of his deceased parent's house because he said he knew that that is the last thing that his father (who we cared for for over 10-years would want). Anthony Forgione can be heard making these promises to us in the following recordings of that conversation on 4/28/21:

https://youtu.be/9S-Xnxy_bXQ

https://youtu.be/XhPw9qBjXYI

However, Anthony Forgione was obviously being deceitful and never

actually intended to rent the house on South Avenue in Webster for us, or to give us the money that he promised, or to purchase land for us, because he obviously retaliated against me for my complaints to the NYSDHR & EEOC by promptly serving us with a "Notice To Vacate" and began eviction proceedings against us while we were looking for land which he encouraged us to do so that he could make the purchase for us!

Also, Anthony Forgione did have his deceased father's car signed over to Tracy on 4/14/21 and required us to pay $181.08 on that date for the car's Title and Registration, he evidently had his employee use THE ADDRESS OF HIS AUTO DEALERSHIP, AUTO LOCATORS, for the car's Title and Registration, so they were sent to his dealership. One of his employees, Tim Granger eventually brought the car's new Registration to us when he came to pick up the mail for Anthony Forgione's other businesses - BUT ANTHONY FORGIONE HAS NEVER GIVEN US THE TITLE TO THE CAR - which we paid his dealership for on 4/14/21, obviously further retaliation against me (Joshua) for my complaints to the NYSDHR & EEOC. The NYS Department Of Motor Vehicles informed us via email that the car's Title was sent to Auto Locators on 5/17/21.

The eviction preceeding were postponed during the coronavirus pandemic, during which I continued to do the house sitting and provide the 24 hour security for The Ralph & Joan Forgione Estates" and the mail sorting for Anthony Forgione's various businesses, but was not paid anymore after I was paid the $2,500. for the house sitting and security etc for the months of December 2020 - March 2021.

Someone in the local/regional office of the NYSDHR ALTERED and transcribed, and filed my handwritten complaints in a horrible inaccurate way, and despite my repeated requests that they correct their errors - they repeatedly refused to correct their egregious errors - even after the Respondent's attorney requested that my complaints should be dismissed - BECAUSE OF THE WAY THE NYSDHR ALTERED AND INACCURATELY FILED MY COMPLAINTS, all of which can be seen in the attached photos!

Page 3 of 7

Also, despite the extreme concerns that I expressed because of the fact that my handwritten complaints were altered and inaccurately transcribed by the NYSDHR, the scheduled a One-Party TELEPHONE conference with me on 2/8/21 with an employee name Johnnayea Edmond instead of a ZOOM conference which could be more easily recorded for accuracy. In fact, Ms. Edmond actually rebuked me in an email because I mentioned recording the conference for the purpose of accuracy and confirmation.

Nevertheless, just as I suspected, when I finally received a copy of Ms. Edmond's written report regarding our telephone conference, it was full of horribly inaccurate and even idiotic statements and answers that she claimed that I made during the telephone conference! For she actually wrote in her written report: "he (Complainant) came to their house when his mother was dying of cancer" and that "his mother approached Complainant" - BUT I NEVER TOLD JOHNNAYEA EDMOND (OR ANYONE ELSE) THAT I (The Complainant) WENT TO THE FORGIONE'S HOUSE WHEN ANTHONY'S MOTHER WAS DYING, AND I NEVER TOLD MS. EDMOND THAT "[ANTHONY'S] MOTHER APPROACHED [ME]" - To the contrary, I very clearly told Ms. Edmond the same thing that I mentioned in my complaint and which I repeatedly stressed in numerous emails when I asked the NYSDHR to correct the inaccurate way that they altered and inaccurately transcribed my complaints, which is the fact that I NEVER, EVER MET ANTHONY FORGIONE'S MOTHER, JOAN FORGIONE, AND THAT SHE PASSED AWAY SEVERAL MONTHS BEFORE MY FAMILY AND I MET AND BEGAN CARING FOR HER HUSBAND, ANTHONY'S FATHER, RALPH FORGIONE!

I vehemently complained in emails to Johnnayea Edmond and other NYSDHR offices about all of the false statements and answers that she claimed in her written report that I told her during the telephone conference, but she said that she was not going to correct any of the false statements and answers that she attributed to me! However, Ms. Edmond DID rewrite and correct portions of her written report in which she repeatedly mentioned and referred to the Respondent's attorney, "Paul" Fioravanti, on a first-name basis, when she was apparently writing

Page 4 of 7

about Anthony Forgione.

Johnnayea Edmond also falsely claimed and wrote in her report that I told her that the Forgione's house, where my family and I resided and cared for Ralph Forgione, is "the only ranch style house in Penfield" which is obviously an idiotic statement and can easily give anyone the impression that I am an ignorant fool. What I did tell Ms. Edmond is that the Forgione's house is the only ranch style house on THE STREET that it is on, and that Ralph Forgione told my family and me that he and his wife had the house built as the first house that was built on that street, and as the only ranch style house ON THAT STREET because of - and for - their physically disabled daughter, Anthony Forgione's sister Barbara Forgione. I told Ms. Edmond that because Anthony Forgione admitted that his sister Barbara wanted my family and me to continue living in the house, and that SHE wanted to move back into the house (which was especially built for her) with my family and me after their father passed away, so that we could be her live-in caregivers - especially because she knew that we are very caring, gentle, reliable, trustworthy, and honest, and that we don't lie, or swear, or steal, or smoke, or use drugs etc, and especially because of the way we cared for her father - AS VOLUNTEERS - for over 10-years. For that reason, I even asked the NYSDHR and Johnnayea Edmond to interview Barbara Forgione as one of the witnesses since Anthony Forgione admitted that she wanted him (the Successor Trustee of their parent's estates) to hire my family and me to be her paid caregivers. I suspect that the NYSDHR never interviewed Barbara Forgione, and I never received a copy of the NYSDHR final report.

https://youtu.be/PXWMTumPXb4

Why would the NYSDHR employee, Johnnayea Edmond falsely claim that I told her that I went to the Forgione's house when Joan Forgione was dying from cancer, and also claim that I told her that Anthony Forgione's mother approached me in their house at that time?!? Apparently Johnnayea Edmond and the NYSDHR was determined from the start to sabotage my case and to horrendously alter and inaccurately transcribe my complaints, and attribute so many ridiculously false statements to

Page 5 of 7

me, to set it up like a virtual T-ball and make it as easy as possible for the Respondent's attorney to persuade the person(s) making the final determination for the NYSDHR that my case should either be dismissed or denied.

Despite his recorded promises that we would not be forced out of the house, and that he purchase land for us with the money that his father apparently wanted him to spend to rent an apartment for my family and me, Anthony Forgione had us evicted and forced to immediately leave our residence on Tuesday, May 3rd 2022 - about five days after teenage son Eian-Gabriel Sinclair (who helped Tracy & me care for Anthony Forgione's father for over 10-years) tested positive for the coronavirus, and a couple days beforeTracy& I tested positive.  Obviously, malicious retaliation for my complaints to the NYSDHR & EEOC - And to avoid paying me/us any of the money that he promised, and which his father apparently included for us (especially our son, Eian-Gabriel, who he was very fond and proud of) in his living trust.

In another manifestation of likely corruption and bias by the NYSDHR, they apparently timed the mailing of their findings with the scheduled date of our eviction, and the reportedly mailed their findings to our former residence (Anthony Forgione's parent's house) a day or two after we were evicted - so I never received a copy of their findings (not even via email), and I was not even informed that they concluded their pseudo-investigation until I received an email from the EEOC in late June, informing me that the EEOC was "adopting the findings of the [NYSDHR]" and dismissing my case - because the NYSDHR claimed that there was 'No Probable Cause' that my rights were violated, OR that I was retaliated against for filing my complaints - even though Anthony Forgione STILL has not given us the Title to Tracy's & Eian-Gabriel's car!  Even though we paid Anthony Forgione's dealership $181.08 for the Title and Registration for the car on 4/14/21, and the DMV informed us that the Title was sent to Anthony's dealership, Auto Locators, on or about 5/17/21.

Finally, it is a common and acceptable practice for concerned family members to have "Nanny-Cameras" spy cameras and other types of Spy-

**Page 6 of 7**

Cameras in certain areas of residents where children or vulnerable elderly and/or disabled adults are being cared for in the home by non family members. However, it has been brought to my attention that Tracy and I may have again had private detectives hired to investigate and attempt to find or create anything that could be used against either or both of us, and that we (perhaps especially Tracy) might have been targeted for secret video recordings with hidden cameras (in more private areas of our residence), not only because of Tracy's very outstanding and remarkable appearance, but also for the purpose of character assassination.

Please let me know if you would be willing and able to represent us in this matter, or at least file the case in federal court for us (which I will of course pay you for) before the deadline stressed by the EEOC: Next Week.

Thank you,

Joshua Ryan Sinclair
(585) 503-5863
(Please note: Poor cell signal and occasional dropped calls because of location)

P.S.: It also came to our attention that Anthony Forgione applied for and received coronavirus PPP LOANS from the government, for $43,615 (for the Second Round) for at least one of his companies, Auto Locators, reportedly for the salary of TEN (10) employees. AND an amount of 43,994 was "Forgiven" by the government. Understandably, I now have to wonder if I and/or Tracy might have been listed as among the 10 alleged employees of Auto Locators, and/or any of the other businesses that Anthony Forgione operated out of his deceased parent's house, where we resided, and where he hired me as a house sitter, 24-hour security, and to sort mail for his various businesses etc.

Page 7 of 7

 Anthony
(585) 224-5220
I am very upset what was written to the newspaper
Apr 8
Very very evil
Apr 8
I feel betrayed
Apr 8
Thank you for the check for the house sitting. We ordered a new phone and phone service. In order to transfer our number we will apparently need to tell our new provider who the current provider is, the name that the current service is under, and the password.
Apr 10
Your phone has been transferred to Olegs account and you can call him to explain whatever you need. 746.4911
Apr 10
Thank you
Apr 10
pe message
SEND

**Department of Motor Vehicles**

There is a new response from DMV! Daniel M., Title Services says:

Dear Tracy,

Thank you for contacting us. In response to your inquiry, Our record shows your title was issued to the dealership address on 5/17/21. I would advise checking with them if they still have it. If not, you would need to apply for a duplicate title online at www.dmv.ny.gov

Please let us know if you need any additional information.

**DanM.**
New York State DMV

---

If you feel we did not answer your question to your satisfaction or you need more information, you can update your question by logging in with your email address and DMV Customer Help password.

Update my question

If you do not have or forgot your password, you can create one at our account assistance page.

Get account assistance

You can find your full conversation with DMV below.

Subject

**To Whom It May Concern, My name is Tracy Estabrooks. I am a volunteer live-in...**

Response By Email (Daniel M., Title Services) (11/03/2021 11:59 AM)

Dear Tracy,

Thank you for contacting us. In response to your inquiry, Our record shows your title was issued to the dealership address on 5/17/21. I would advise checking with them if they still have it. If not, you would need to apply for a duplicate title online at www.dmv.ny.gov

Please let us know if you need any additional information.

**DanM.**
New York State DMV

---

During the Coronavirus pandemic, Anthony Forgione, owner of Auto Locators, had his employee use the address of his dealership on the registration of our vehicle instead of the address of our residence. Retaliation: They also had the Title for our vehicle sent to his dealership.

And they never gave us the Title.

AUTO LOCATORS, INC.
772 RIDGE ROAD
WEBSTER, NY 14580
585-787-8660
FAX: 585-446-0449

FACILITY # 7065845

STOCK: M43503
SALESMAN:

THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE SELLER AND THE BUYER

BUYER'S NAME(S):
TRACY L ESTABROOKS
ROCHESTER, NY 14625

THE TRANSACTION

NEW □  USED XX  Vehicle Identification No. 1YVHP80C575M43503  GY  49,516

THE PRICE

| VEHICLE PRICE | (+) | 1.00 |

TOTAL  1.00

THE TRADE-IN

| LESS TRADE-IN CREDIT (-) (BUYER SEE 1 AND 6(c) ON BACK) | 0.00 |
| CASH PRICE | 1.00 |

TAXES AND OTHER FEES

| SALES TAX  MONROE | % (+) | 0.08 |
| REGISTRATION FEE (ESTIMATE) | (+) | 180.00 |
| INSPECTION FEE | (+) | |
| TOTAL CASH PRICE DELIVERED | | 181.08 |
| CASH DUE ON DELIVERY | | 181.08 |
| AMOUNT FINANCED | | |

BUYER'S SIGNATURE                           DATE  04/14/2021
CO BUYER'S SIGNATURE                        DATE
SELLER APPROVED BY:                         DATE  04/14/2021

www.moneygram.com/moneyorder

R210001598719

This is
our receipt
confirming that
we paid
Anthony Forgione's
Auto Locators
dealership
$181.08
for the Title
and Registration
for our vehicle
on 4/14/21
during the
Coronavirus pandemic.
Retaliation:
The DMV informed us
the Title was sent to
Auto Locators
on 5/17/21.
But the dealership
never gave us the Title.

# Anthony Forgione RE: Parents & Sinclair Famııy (4/28/21)

Anthony Forgione Speaking To Joshua Sinclair & Family
Audio Recordings Posted Online At:
YOUTUBE: Homecare Joy And Pain
& Sinclair Family Features
TWITTER: @InHomeCareTLC
(Homecare.Joy.And.Pain)
INSTAGRAM: Homecare.Joy.And.Pain
FACEBOOK PAGE: Joy & Pain Of In-Home Caregiving

https://youtu.be/ufTAN-A_Rzc

Excerpt From Conversation On 4/28/21:

"I still tell the story often,
um, the people that are close to me,
they haven't seen him in a while,
and whatever,
they ask about my father (inaudible),
long lost friends from college, whatever,
And I tell the story,
how I asked if you would
consider caring for my mother,
And how, you know,
I came to the house,
and had dinner with my parents,
And, um, my mom said:
'Oh Ralph, I think that's such a great idea!'
And my father said:
'No, we're not having strangers in the house.'
And then the one day I go (inaudible)
in the back room,
Tracy or you came out of the door,
And (inaudible), Oh, HI,
He goes: 'Ah, they're gonna stay for a few days.'"

# Anthony Forgione Admitting He Lied (4/28/21)

Anthony Forgione Speaking To Joshua Sinclair & Family
Audio Recordings Posted Online At:
YOUTUBE: Homecare Joy And Pain
& Sinclair Family Features
TWITTER: @InHomeCareTLC
(Homecare.Joy.And.Pain)
INSTAGRAM: Homecare.Joy.And.Pain
FACEBOOK PAGE: Joy & Pain Of In-Home Caregiving

https://youtu.be/PXWMTumPXb4

Excerpt From Conversation On 4/28/21

"I had to lie to my father, that I would never say anything. I had to lie to my sister cause I'm saying it now. I had to lie to my sister. And here we, here we are. (inaudible) ...Then she got upset with you. She asked if you could care for her. I couldn't do it to you. My father couldn't do that to you. It's not because my sister isn't a good human being, with (inaudible) ...a lot of love, but there's a lot of differences the way she sees things in life. And I can't assume that she won't say something (inaudible) ...make you very upset. If I could, I'll pay you whatever it took to help her. Have you stay in this house, and have her stay here, but that would be completely unfair. Completely."



Elan-Gabriel Sinclair with the late Ralph Forgione (who the Sinclair family was Volunteer live-in caregivers & security for for over 10 years, then Ralph's volunteer live-in hospice care providers until he passed away on 11/28/20) and Ralph's daughter Barbara (who has a physical disability)

Barb's brother Anthony Forgione admitted on 4/26/21 that he lied to his sister and to their father because his sister wanted the Sinclair family to become her paid live-in caregiver after their father passed away.

Anthony Forgione said he lied to Ralph & Barb because he did not think it would be fair to Joshua Sinclair (Eb's father) to care for his physically disabled sister, because he claimed that he was concerned that Barbara might say something that might upset Joshua.

Anthony Forgione also admitted that he is the Successor Trustee of their parent's estate and is responsible for making sure that his disabled sister has needed caregivers.

Yet, he lied to his own elderly father and physically disabled sister in order to avoid hiring the caregivers that his sister requested - who were the same caregivers that provided very reliable & compassionate care, companionship & security (& hospice care) for their elderly father (as volunteers) for over 10 years, until he passed away in his home, with them at his side.

## Anthony Forgione Promised: You're Not Going To Be Kicked Out

Anthony Forgione Speaking To Joshua Sinclair & Family
Audio Recording Posted Online At:
YOUTUBE: Homecare Joy And Pain
& Sinclair Family Features
TWITTER: @HHomeCareTLC
(Homecare Joy And Pain)
INSTAGRAM: Homecare.Joy.And.Pain
FACEBOOK PAGE: Joy & Pain Of In-Home Caregiving

https://youtu.be/9S-Xnxy_bXQ

Excerpt From Conversation On 4/28/21



" ...But I do know
I have the resources myself.
And I don't want you stressing out
that you're going to be kicked out
on the street.
It's the last thing I would want.
It's the last thing my father would want.
But I know one thing
that I can do myself.
And I can rent you an apartment.
And my sisters
don't need to be involved."

---



4/15

MARSHAL/CONSTABLE
SANDE L. MACALUSO

P.O. Box 67164
Rochester, NY 14617
OFFICE (585) 544-4893

TO: _Joshua Sinclair - Mary Sinclair / Estp branks_ AND ALL OTHER PERSONS ✓

336 _5e Beanty house_

14625

A WARRANT WAS ISSUED OUT OF _SOLP_ COURT TO
EVICT YOU FROM THE PREMISES OF _5e Beanty house_

**YOU HAVE A HOURS IN WHICH TO VACATE THESE PREMISES**

UNLESS YOU VACATE BY _4-30-22_ YOU WILL BE MOVED OUT ON
_4-30-2_, OR AS SOON AS A TRUCK IS AVAILABLE,
(LANDLORDS OPTION) - YOUR BELONGINGS WILL BE PLACED IN STORAGE,
HOWEVER, THE LANDLORD MAY STORE YOUR BELONGINGS AT ANOTHER
LOCATION OF HIS/HER CHOOSING.

NOT COMPLYING WITH THE COURT ORDER, AND NOT VACATING THE
PREMISE, ON THE DATE SPECIFIED - CAN LEAD TO YOUR ARREST.

SANDE L. MACALUSO
MARSHAL/CONSTABLE

December 7, 2021       *Rebuttal To The Respondent's Attorney's*
                       *Reply To Complainant*
                       *Of Discrimination And Retaliation*

1

New York State Division Of Human Rights
One Monroe Square
259 Monroe Avenue, Suite 308
Rochester, NY 14607

XC:  NYSDHR Headquarters
XC:  Equal Employment Opportunity Commission

NYSDHR Case Numbers:  10214250 & 10214247
EEOC Charge Numbers:  16GC200415 & 16GC200411

To Whom It May Concern,

This is my rebuttal to the replies that were sent to the NYSDHR by the
attorney for the respondents in the above listed cases, in which he
requested that my cases should be dismissed - BECAUSE, AS I
STRESSED IN MY 11/23/2021 LETTER TO THE NYSDHR (& EEOC),
APPARENTLY SOMEONE IN THE LOCAL (ROCHESTER) OFFICE OF THE
NYSDHR SEVERELY ALTERED AND INACCURATELY TRANSCRIBED, AND
"IMPROPERLY FILED" MY COMPLAINTS, AS NOTED BY MR. FORGIONE'S
ATTORNEY!

As you can (again) see on the enclosed discrimination complaints that I
actually filed with the NYSDHR on 11/3/21 (14 handwritten pages), the
local office of the NYSDHR apparently transcribed the cases inaccurately
in the enclosed confirmation emails that I was sent - and evidently
"improperly filed" my complaints:

As you can see, the first* complaint that I filed (NYSDHR Case Number:
10214250; EEOC Charge Number:  16GC200415) is actually against *THE
RALPH AND JOAN FORGIONE ESTATES (THE ESTATES OF THE LATE
RALPH AND JOAN FORGIONE), AND ANTHONY FORGIONE, THE
SUCCESSOR TRUSTEE OF SAID ESTATES.* However, as you can also see,
the local office of the NYSDHR transcribed the first case as *"Joshua R.*

2

*Sinclair v. Ralph Forgione, Joan Forgione"* - although Ralph & Joan Forgione are both deceased, and not against the "*ESTATES*" of Ralph and Joan Forgione - And Anthony Forgione as the Successor Trustee of their estates.

Also, as you can see, the second* complaint that I filed (NYSDHR Case Number: 10214247;  EEOC Charge Number:  16GC200411) is actually against *ANTHONY FORGIONE (PROPRIETOR) AND EACH OF ANTHONY FORGIONE'S BUSINESSES WHICH USE THE ADDRESS AT 56 RODNEY LANE, ROCHESTER, NY, 14625.  NAMELY:  REALTY EXCHANGE, LLC; CSL SYSTEMS; CLINTON STONE, LLC; WATER SONG DEVELOPMENT, LLC; AUTO LOCATORS; EASTCORP PROPERTIES.*  However, as you can also see, the local office of the NYSDHR inaccurately transcribed the second case as "*Joshua R. Sinclair v. The Estate Of Anthony Forgione*".

I (AGAIN) humbly request that the NYSDHR correct these inaccuracies in the transcriptions since they could possibly be detrimental to my case.

Regarding Anthony Forgione's attorney's false description of my relationship with the Forgiones and his false claim that my family and I were homeless and that Ralph Forgione (already nearly 90 years old at that time) simply allowed my family and I to move in with him, and that there was never any employer-employee or similar relationship between myself and Ralph Forgione, please click link at the end of this paragraph and listen to the following recording in which, Anthony Forgione clearly said on 4/28/2021 that he often tells his friends that over ten years ago (before we ever met his father, Ralph), he (Anthony Forgione) asked his parents if they would like us (Tracy or our family) to become caregivers for his ailing mother (who was suffering from and eventually died from cancer), at which time Anthony Forgione claimed that his father, Ralph Forgione said "No, we're not having strangers in the house." - But Anthony Forgione then said he was subsequently surprised one day when he came to visit his father after his mother passed away, and saw that his father, Ralph had invited our family to be live-in caregivers, companions and security for himself, after Ralph's wife died from cancer.  Now, Anthony Forgione and his attorney wants the NYSDHR (& the EEOC) to

**3**

believe that Anthony's father, Ralph did NOT want "strangers" in his house to care for his wife who was dying from cancer - but that he suddenly allowed a homeless family that he had only known for a couple months to move into his house to live with him just months after his wife died! In fact, Anthony Forgione's employee, Timothy Granger, initially approached me on behalf of Anthony Forgione and asked me if my partner Tracy and I would come to Anthony's car dealership (also on Ridge Road in Webster) because they had recognized us (especially Tracy) from an "Everyday Angels" newspaper article that was previously published about our volunteer work and advocacy as caregivers, and he told me Anthony Forgione wanted to meet us. We went to the dealership as requested and met Anthony Forgione who told us about his parents and made arrangements for us to begin assisting his father - THAT IS HOW WE MET ANTHONY FORGIONE'S FATHER, RALPH FORGIONE. Anthony Forgione (and his employee) also showed us a used car that he said he would donate to us (but he never gave us that car), and he also had our cellphone promptly added to his family/business account because we agreed to assist his father. Anthony Forgione's employee, Timothy Granger is obviously a witness who can confirm that this is, in fact, how we met Anthony Forgione, AND HOW - AND WHY - THEY INTRODUCED US TO ANTHONY'S FATHER, RALPH FORGIONE. Timothy Granger was also present during the entirety of the following (recorded) conversation and is a witness that Anthony Forgione did, in fact, say all of these things:

https://youtu.be/ufTAN-A_Rzc

Please also note the fact that, during that same (recorded) conversation on 4/28/2021, Anthony Forgione, who is the Successor Trustee of his parent's estate and has the responsibility of making all of the necessary arrangements and payment to ensure that his disabled sister, Barbara Forgione, has adequate care and needed caregivers, revealed that his sister Barbara actually asked him if my partner Tracy and I could become HER (paid) live-in caregivers, companions & security after their father passed away. Apparently, their father may have expressed the same desire, because Anthony Forgione admitted during that recorded conversation (on 4/28/2021): "I had to lie to my father... I had to lie to my

**4**

sister... had to lie to my sister." - ABOUT ME, Joshua - in a way that he said caused his sister to become upset with ME! And the REASON that he admitted he lied to his disabled sister (who he said did not have a caregiver or even anyone to drive her where she needed or wanted to go) was because he claimed that he could not do that to ME, Joshua, and he thought it would be "completely unfair" to me, Joshua! As mentioned above, Anthony Forgione's employee Timothy Granger was present during this entire recorded conversation and therefore is a witness that Anthony Forgione did, in fact, say all of these things:

https://youtu.be/PXWMTumPXb4

Additionally, even to the present day, today, I continue to sort and handle the mail for Anthony Forgione and his various businesses (named in my complaint) which use the address of our residence, 56 Rodney Lane, Rochester, NY, 14625 (photos attached), just as Anthony Forgione requested after his father passed away, and which is usually picked up by his employee Tim Granger about every two weeks since Ralph Forgione passed away. And I am still serving as 24-hour security for all of his deceased parent's belongings which are still in the residence, as well as records etc. for Anthony Forgione's various businesses. But without being compensated (as promised) when Anthony Forgione asked and persuaded me to do so by clearly stating that that was the request of his deceased father, Ralph Forgione, and that I would be compensated.

Finally, the fact that Anthony Forgione uses the address of the residence at 56 Rodney Lane, Rochester, NY, 14625 for several of his businesses (photos attached) strongly suggests that he does not actually intend to sell the house - but if he actually does intend to sell the house it would seem to expose an extreme degree of selfishness and greed and utter disregard for the needs and desires of his disabled sister, Barbara Forgione, who he admitted in the recording at the link above, wants to return to live in this house, which their father Ralph Forgione told us that he and his wife had built especially to accommodate their disabled daughter, Barbara. PLUS, since Anthony Forgione revealed that their parent's estate(s) provides the financial resources to pay for appropriate

care and caregivers for their disabled daughter Barbara, and that he (Anthony) as Successor Trustee of their estate(s) has the responsibility to make the necessary arrangements and pay for his sister Barbara's caregivers - And the fact that Anthony Forgione also clearly stated in that recorded conversation on 4/28/2021: "If I could, I'll pay you whatever it took to help her [his disabled sister, Barbara Forgione]. Have you stay in this house, and have her stay here." And the only reason why he claimed that he could not do that is because he claimed that it would be "unfair" to me, Joshua, supposedly because he claimed to be concerned that his sister Barbara MIGHT "say something" that might make me upset. Evidently grossly neglecting his responsibilities toward his disabled sister as Successor Trustee of their parent's estate(s) - AND GROSSLY NEGLECTING HIS DISABLED SISTER'S SPECIAL NEEDS AND DESIRES!

Clearly, Anthony Forgione is willing to use - and perhaps desires to continue using - the house that his deceased parents built as an address for his (Anthony's) various businesses instead of for his disabled sister who the house was especially built for.

PLEASE NOTE: The fact that Anthony Forgione served me with a "notice to vacate" was RETALIATION because of my previous complaints as I explained in my attached formal complaint, and his filing "an eviction preceeding" against me on "November 5, 2021" was FURTHER RETALIATION because of the letter of complaint that I wrote to the NYSDHR on September 30th, 2021 and the attached formal application that I filed on November 3rd, 2021.

Best Wishes & Blessings,

Joshua Ryan Sinclair
TlcsInHomeCareConnection@gmail.com

# Paul M. Fioravanti

**Attorney and Counsellor at Law**

----

P.O. Box 205
Fairport, New York 14450

pfiorav@gmail.com

November 24, 2021

Julia B. Day
NYS Division of Human Rights
259 Monroe Avenue
Rochester, New York 14607

Telephone: (585) 598-3240
Facsimile: (585) 425-0624

-----

**Courier Delivery:**
35 Kirkby Trail
Fairport, New York 14450

CORRUPTION & SABOTAGE:
PLEASE NOTE: My complaint #1 was altered by the local NYSDHR
as being against the dead couple, Ralph & Joan Forgione personally,
instead of being against their "ESTATES" and against Anthony Forgione
as the Successor Trustee of their estates - which is the way I prepared my complaint.
I repeatedly asked and exhorted the NYSDHR to correct the improper way that they
transcribed and filed my complaints, but THEY REFUSED TO CORRECT IT - even after
the Respondent's attorney requested that my case should be dismissed
BECAUSE OF THE WAY THE NYSDHR ALTERED AND IMPROPERLY FILED MY COMPLAINTS!

Re:   Joshua R. Sinclair v. The Estate of Anthony Forgione  Case No. 10214247
Joshua R. Sinclair v. Joan Forgione  Case No. 10214250
Joshua R. Sinclair v. Ralph Forgione  Case No. 10214250

Dear Ms. Day:

I represent Anthony R. Forgione. Mr. Forgione forwarded me three complaints filed by Joshua R. Sinclair. I will briefly address the relationship of the named parties, but first request that all three complaints be dismissed as they are improperly filed. First and most obviously, there is no Estate of Anthony Forgione. Anthony R. Forgione is alive and has never employed Mr. Sinclair. Second, Joan Forgione is deceased, having passed away on February 23, 2010, and to the best of my client's knowledge, never knew or even met Mr. Sinclair. Third, Ralph Forgione is deceased, having passed away on November 28, 2020.

As to the relationships of the parties, Mr. Sinclair and his family were homeless on or about December of 2010. The late Ralph Forgione allowed the family to move in with him at 56 Rodney Lane in Penfield, New York. There was never any employer-employee or similar relationship between Mr. Sinclair and Ralph Forgione. Following the death of Ralph Forgione, his son Anthony R. Forgione advised Mr. Sinclair that he and his family would need to find a new place to live as the trust that owned the home needed it vacant in order to sell same.

A notice to vacate was served on Mr. Sinclair in July of 2021. Based on his failure to vacate the premises at 56 Rodney Lane in Penfield, an eviction proceeding was filed against Mr. Sinclair by the Trust that owns the property on November 5, 2021. That matter is currently pending.

I hereby request that the Complaints be dismissed for lack of standing and jurisdiction as none of the parties named as defendants exist or are alive. Should your office be unwilling or unable to do so, I hereby request an extension of time to answer the complaints as Anthony R. Forgione was recently diagnosed with Covid-19, and was not able to have adequate time to prepare

a response to the merits of the complaint, or better stated, the lack thereof.

Very truly yours,

PAUL M. FIORAVANTI

c:      Anthony R. Forgione

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/17/2022

**To:** Joshua Sinclair
56 Rodney Lane
Rochester, NY 14625

Charge No: 16G-2022-00411

EEOC Representative and email:   Holly Shabazz
S/L Program Manager
HOLLY.SHABAZZ@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Judy Keenan
06/17/2022

Judy Keenan
District Director

**Cc: Anthony Forgione**
**14 Green Pine Lane**
**Webster NY 14580**